# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Civil No. 14-4666 (JRT/TNL)**

REGENTS OF THE UNIVERSITY OF
MINNESOTA,

                                        Plaintiff,

v.

AT&T MOBILITY LLC,

                              Defendant.

---

**Civil No. 14-4669 (JRT/TNL)**

REGENTS OF THE UNIVERSITY OF
MINNESOTA,

                                        Plaintiff,

v.

SPRINT SOLUTIONS, INC. and SPRINT
SPECTRUM, L.P.,

                              Defendants.

---

**Civil No. 14-4671 (JRT/TNL)**

REGENTS OF THE UNIVERSITY OF
MINNESOTA,

                                        Plaintiff,

v.

T-MOBILE USA, INC.,

                              Defendant.

---

**Civil No. 14-4672 (JRT/TNL)**

REGENTS OF THE UNIVERSITY OF
MINNESOTA,

                                        Plaintiff,

v.

CELLCO PARTNERSHIP *d/b/a* VERIZON
WIRELESS,

                              Defendant.

---

**MEMORANDUM OPINION
AND ORDER ON MOTIONS
TO DISMISS**

Ann N. Cathcart Chaplin, David A. Gerasimow, and William R. Woodford, **FISH & RICHARDSON PC**, 60 South Sixth Street, Suite 3200, Minneapolis, MN  55402; Frank E. Scherkenbach, **FISH & RICHARDSON PC**, One Marina Park Drive, Boston, MA  02210; and Tracy M. Smith and William P. Donohue, **UNIVERSITY OF MINNESOTA OFFICE OF GENERAL COUNSEL**, 200 Oak Street S.E., Suite 360, Minneapolis, MN  55455, for plaintiff.

Carrie L. Zochert, **BERENS & MILLER, P.A.**, 80 South Eighth Street, Suite 3720, Minneapolis, MN  55402; and Benjamin Hershkowitz, **GIBSON DUNN**, 200 Park Avenue, New York, NY  10166, for defendant AT&T Mobility LLC.

George R. Spatz, **MCGUIRE WOODS LLP**, 77 West Wacker Drive, Suite 4100, Chicago, IL  60601; and Kevin D. Conneely, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN  55402, for defendants Sprint Solutions, Inc. and Sprint Spectrum, L.P.

David B. Potter, **OPPENHEIMER WOLFF & DONNELLY LLP**, 222 South Ninth Street, Suite 2000, Minneapolis, MN  55402; and Garland T. Stephens, **WEIL, GOTSHAL & MANGES LLP**, 700 Louisiana Street, Suite 1700, Houston, TX  77002, for defendant T-Mobile USA, Inc.

Emily Grande Stearns, **BARNES & THORNBURG LLP**, 225 South Sixth Street, Suite 2800, Minneapolis, MN  55402; and William F. Lee and Louis Tompros, **WILMER CUTLER PICKERING HALE & DORR LLP**, 60 State Street, Boston, MA  02109, for defendant Cellco Partnership.

Inventors at Plaintiff University of Minnesota ("the University") hold various patents with respect to components of Long-Term Evolution ("LTE") wireless communications systems.  The University is bringing these patent infringement actions – four in total – against major wireless service providers: AT&T Mobility LLC ("AT&T"), Sprint Solutions, Inc. and Sprint Spectrum, L.P. (together, "Sprint"), T-Mobile USA, Inc. ("T-Mobile"), and Cellco Partnership ("Verizon") (together, "the Defendants"), alleging violations of five of those patents.  Specifically, the University alleges that the

Defendants' LTE wireless communications systems embody the inventions claimed in the five asserted patents, without compensation or authorization to the University or its faculty.

All four of the Defendants have moved to dismiss the University's amended complaint. Accepting as true all allegations in the amended complaint, the Court concludes that the University hasd adequately pled claims for direct infringement, induced infringement, and contributory infringement, but not willful blindness. Therefore, the Court will grant the Defendants' motions in part as to the willful blindness claims but deny the motions as to the University's claims for direct infringement, induced infringement, and contributory infringement.

## BACKGROUND

I.     THE PATENTS

The University, through its inventors, holds hundreds of patents issued by the United States Patent and Trademark Office ("USPTO"). (Am. Compl. ¶ 6, Jan. 30, 2015, Docket No. 27.)[1] Royalties from those patents enable the University to invest in further education and research. (*Id.* ¶ 5.) In 2013,[2] the University received nearly $40 million in

---

[1] Because the University makes identical allegations against each Defendant, the docket entries for each action on CM/ECF are nearly the same, and the Defendants have coordinated their briefing. For consistency, each of the Defendants' responsive filings refers to the pagination and docket numbers in the Verizon case (*Regents of the Univ. of Minn. v. Cellco P'ship*, No. 14-4672). The Court will use the same format for the purposes of this Order. Accordingly, each citation to the record will refer to the filings in the Verizon case.

[2] The most recent year for which data is available.

royalty revenues from licensing and commercializing the University's patented inventions. (*Id.*)

A number of the University's patents relate to aspects of wireless communication systems, many of which were developed by Professor Georgios Giannakis and his colleagues. (*Id.* ¶ 6.) Professor Giannakis has been a member of the University's faculty since 1999. (*Id.* ¶ 7.) He is the Director of the Digital Technology Center and holds an Endowed Chair in Wireless Communications. (*Id.*) The University alleges that he "is among the top ten most cited researchers in the field of computer science, and the most cited researcher in the fields of signal processing, communications, and networking." (*Id.*)

In this case, the University alleges that the Defendants infringed five patents ("the Asserted Patents"): (1) U.S. Patent No. 7,251,768 ("the '768 Patent"), entitled "Wireless Communication System Having Error-Control Coder and Linear Precoder"; (2) U.S. Reissue Patent No. RE45,230 ("the '230 Patent"), entitled "Wireless Communication System Having Linear Encoder"; (3) U.S. Patent No. 8,588,317 ("the '317 Patent"), entitled "Estimating Frequency-Offsets and Multi-Antenna Channels in MIMO OFDM Systems"; (4) U.S. Patent No. 8,718,185 ("the '185 Patent"), entitled "Estimating Frequency-Offsets and Multi-Antenna Channels in MIMO OFDM Systems"; and (5) U.S. Patent No. 8,774,309 ("the '309 Patent"), entitled "Estimating Frequency-Offsets and Multi-Antenna Channels in MIMO OFDM Systems." (*Id.* ¶¶ 13, 16, 19, 22, 25; *id.*, Exs. A-E.) Each of the Asserted Patents was issued to Professor Giannakis and his colleagues, and each relates to a component of wireless communications systems. (*Id.*

¶¶ 13, 16, 19, 22, 25.)  The University is now the sole owner of each of the Asserted Patents.  (*Id.* ¶¶ 15, 18, 21, 24, 27.)

## II.    ALLEGED INFRINGEMENT

The Defendants all own and/or operate wireless communications systems that are publicly referred to as "4G LTE networks."  (*Id.* ¶ 28.)  The Defendants use 4G LTE networks to provide communication services to their customers.  (*Id.*)  The amended complaint alleges that to provide these services, the Defendants adopted "important and valuable technical innovations made by Professor Giannakis and his colleagues . . . without the University's authorization, and also without compensating the University."  (*Id.* ¶ 8.)

More specifically, the University alleges that the Defendants imported, made, and/or used LTE wireless communications systems and performed methods using those systems that directly infringed one or more claims of each of the Asserted Patents.  (*Id.* ¶¶ 32, 38, 44.)  The amended complaint also alleges that Defendants sold and offered to sell services that involved the use of these LTE wireless communication systems and involved the use of methods that directly infringed one or more claims of each of the Asserted Patents.  (*Id.*)  The example provided in the amended complaint is that the patented inventions "relate to the operation of the radio access portion of [Defendants'] LTE wireless communication systems."  (*Id.* ¶ 29.)

The University claims that since at least November 6, 2014 – the day the original complaint was served – the Defendants have known that their actions constituted

infringement and have actively and knowingly induced infringement of the Asserted Patents by selling communication services to customers that use the infringing systems. (*Id.* ¶¶ 33, 39, 45.)  The complaint points to the Defendants' "marketing, promoting, and advertising the use of its LTE network" as evidence of its specific intent to infringe the Asserted Patents.  (*Id.*)  The University alleges that the Defendants have taken infringing actions with the knowledge that there is a "high probability" that the components of their LTE wireless communication systems infringed on the University's patents.  (*Id.*)

## III.   PROCEDURAL HISTORY

On November 5, 2014, the University filed its original complaints in four related actions, alleging that the Defendants directly infringed and would indirectly and willfully infringe five patents.  (Compl. ¶¶ 32-33, 39-40, 46-47, Nov. 5, 2014, Docket No. 1.)  On January 9, 2015, the Defendants filed a Motion to Dismiss the Complaint.  (Mot. to Dismiss Compl., Jan. 9, 2015, Docket No. 19.)  In response, the University filed amended complaints against each Defendant, removing the willful or bad-faith infringement allegations.  (*See generally* Am. Compl. (excluding ¶¶ 35, 42, and 49 of the original complaint).)  The amended complaint seeks damages and injunctive relief.  (*Id.* ¶¶ 34-36, 40-42, 46-48.)  On February 17, 2015, the Defendants moved to dismiss the University's amended complaint.  (Mot. to Dismiss Am. Compl., Feb. 17, 2015, Docket No. 31.)  This matter is now before the Court on the motions to dismiss.

ANALYSIS

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).

## II.    DIRECT INFRINGEMENT CLAIMS

The University makes two sets of claims.  The first set involves allegations of direct infringement – actions by the Defendants that infringe on the University's patents (e.g., importing, making, and using LTE wireless communications systems that embody the inventions claimed in the Asserted Patents).   Although the University's direct infringement claims are stated at a high level of generality, the Court finds that they track Form 18 of the Federal Rules of Civil Procedure, which lays out a sample Complaint for

Patent Infringement claims.  Therefore, the Court will deny the Defendants' motions to dismiss as to direct infringement and allow the University's direct infringement claims to proceed.

### A.      Form 18

Form 18 of the Federal Rules of Civil Procedure provides a template for a Complaint for Patent Infringement.  The form is highly generic.  Form 18 uses an "electric motor" as an example of an invention and, aside from a statement of jurisdiction, it contains only four components: (1) the number of the relevant patent and its issue date, along with an assertion that "[t]he plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent;" (2) an allegation that "[t]he defendant has infringed and is still infringing" the patent in some way – for example, "by making, selling, and using [a product or invention] that embod[ies] the patented invention;" (3) a statement that the plaintiff has given the defendant written notice of the alleged infringement; and (4) a demand for relief.  Fed. R. Civ. P. Form 18.

The Federal Circuit has ruled that "to the extent . . . that *Twombly* and its progeny conflict with [Form 18 and related forms] and create differing pleadings requirements, the Forms control."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.* ("*Bill of Lading*"), 681 F.3d 1323, 1334 (Fed. Cir. 2012).  Although the pleading standards under *Twombly* and *Iqbal* appear to require greater detail than bare bones allegations, "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.  Indeed, a

plaintiff need not even identify which claims it asserts are being infringed." *Id.* at 1335 (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). "Thus, whether [plaintiffs'] amended complaints adequately plead direct infringement is to be measured by the specificity required by Form 18." *Id.* at 1334.

While "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement," *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.* ("*K-Tech*"), 714 F.3d 1277, 1284 (Fed. Cir. 2013), the Federal Circuit has explained that compliance with Form 18 is an adequate method of putting potential infringers on notice, *Bill of Lading*, 681 F.3d at 1335-36. More to the point, Federal Rule of Civil Procedure 84 confirms that "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84. In other words, "[a]s long as the complaint in question contains sufficient factual allegations to meet the requirements of Form 18, the complaint has sufficiently pled direct infringement." *Bill of Lading*, 681 F.3d at 1336.

### B.      Sufficiency of the Amended Complaint Allegations

The amended complaint appears to meet the Form 18 requirements. First, the University identified five patent numbers and their issue dates, coupled with allegations that the University is the sole owner of each patent. (Am. Compl. ¶¶ 13-27.) This satisfies the first component of Form 18: that the complaint must identify the number and date of issue for each patent, along with an allegation that the plaintiff has continuously

held the asserted patent(s).  Second, the amended complaint alleges that "[o]n or after the issue date of [each] Patent, Defendant has imported, made, and/or used within the United States LTE wireless communications systems and performed methods using those LTE wireless communication systems that directly infringe one or more claims of [each] Patent." (*Id.* ¶¶ 32, 38, 44.)  This clears the Form 18 threshold that a direct infringement complaint must allege that "[t]he defendant has infringed and is still infringing" the patent.  Fed. R. Civ. P. Form 18.  Indeed, the University's allegations are no more generic than the Form 18 sample language that a defendant has engaged in direct infringement "by making, selling, and using [a product or invention] that embod[ies] the patented invention." *Id.*  As to the third component, the University alleges that it has provided to the Defendants written notice of patent infringement no later than November 6, 2014. (Am. Compl. ¶¶ 33, 39, 45.)  Finally, the amended complaint includes a prayer for relief. (*Id.* at 15-16.)  Thus, the amended complaint satisfies each component of Form 18.

In further support of the conclusion that the University's complaint adequately states a claim for relief, Local Rule Form 4 – the District of Minnesota's Rule 26(f) Report and Proposed Scheduling Order for patent cases – includes a stage of "Discovery Relating to Claim Construction Hearing," which takes place after the pleadings have been submitted.  During this subsequent discovery phase, the plaintiff is required to provide a claim chart specifying "which claim(s) of its patent(s) it alleges are being infringed" and "which specific products or methods of [the defendants'] it alleges literally infringe each claim."  D. Minn. LR Form 4(e)(1)(B)(i)-(ii).  This suggests that such specificity is not

required at an earlier stage in every patent infringement complaint, or the local rule would be rendered superfluous.

Despite these indications that the University's complaint satisfies Form 18 and, consequently, Rule 8, the Defendants insist that alleging infringement through the use of "wireless communications services" does not offer adequate notice of the allegedly infringing products or services. *See, e.g.*, *Eidos Commc'ns, LLC v. Skype Techs. SA*, 686 F. Supp. 2d 465, 467 (D. Del. 2010) (finding that the identification of general "communication system products and/or methodologies" was not sufficient to state a claim for relief without identifying at least a general product category (internal quotation marks omitted)). Given that the "LTE standard" consists of thousands of pages and many different devices, the Defendants argue that they have no way of knowing which specific product category the University claims infringes its patents. In ruling on a motion to dismiss in a similar case, a District of Nebraska court found a direct infringement complaint inadequate when it alleged infringement by AT&T's "various wireless products and data services," which the court concluded was "considerably more generic than the term 'electric motor' as identified in Form 18" as an example of an infringing product. *Prism Techs., LLC v. AT&T Mobility, LLC*, No. 12-122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012). The Defendants urge the same result here.

The Court is not bound by the decisions in *Eidos Communications* and *Prism Technologies*. With that in mind, the Court is not persuaded that these cases are inconsistent with allowing the University's direct infringement claim to proceed. The University's complaint is not defeated merely because the complaint's language of "4G

LTE wireless communication systems" is similar to the phrasing of "communication system products" or "various wireless products," as used in *Eidos Communications* and *Prism Technologies*, respectively.  The allegations in the University's complaint are not as generic as those in *Eidos Communications* and *Prism Technologies*.  A 4G LTE wireless communication system is more specific than "various wireless products," and the specification of the "radio access portion" of that 4G LTE wireless network narrows the scope of the products still further.  Indeed, in light of the broad universe of wireless products and services the Defendants offer, the University's complaint offers substantially more direction than did the allegations in *Eidos Communications* and *Prism Technologies*.

The Defendants protest that the radio access portion of a 4G LTE wireless communication system is still not one specific device, leaving uncertainty as to the particular source of the University's challenge.  The fact that a plaintiff "cannot point to the specific device or product within [the Defendants'] systems" that technically triggers the infringement, however, "should not bar [the Plaintiff]'s filing of a complaint."  *K-Tech*, 714 F.3d at 1286.  Rather, the Court must consider the complaint as a whole, and the specificity required for any challenged complaint necessarily "depends on the breadth and complexity of both the asserted patent and the accused product or system and on the nature of the defendant's business activities."  *Id.*

Here, a wireless communication network is a highly complex system and although the University has not pointed to precise components of the network that are accused of direct infringement, the University has not left the Defendants in the dark about the

nature of the alleged infringement.  The University has identified five patents, each of which is attached to the amended complaint and covers a specific aspect of the wireless communication system.  The amended complaint alleges that the infringement relates to the radio access portion of a 4G LTE wireless communication system.  It goes on to identify Asserted Patents related to two categories – three bear the exact same title, "Estimating Frequency-Offsets and Multi-Antenna Channels in MIMO OFDM Systems," (Am. Compl., Exs. C-E (the '185, '309, and '317 Patents)), and the other two both relate to coding techniques designed to improve diversity while minimizing delay, (Am. Compl., Exs. A-B (the '768 and '230 Patents)).  While these categories do not identify a single specific component of the Defendants' systems that infringe the Asserted Patents, and presumably still encompass a number of products, they narrow the scope of the 4G LTE wireless communication system to provide the Defendants with a sense of the fields and features that are at issue in this complaint.  The University's claims are not doomed merely because a coding technique for a wireless communication network is not as simple an invention to identify or describe in a complaint as an electric motor.  Thus, "[w]hile the First Amended Complaint may have benefited from enhanced specificity, it is sufficiently specific to pass muster under Rules 8 and 12(b)(6)." *Cold Spring Granite Co. v. Matthews Int'l Corp.*, No. 10-4272, 2011 WL 4549407, at *2 (D. Minn. Sept. 29, 2011); *e-LYNXX Corp. v. InnerWorkings, Inc.*, No. 10-2535, 2011 WL 3608642, at *5 (M.D. Pa. July 26, 2011) ("*Twombly* and *Iqbal* do not impose a heightened or

particularized standard of factual specificity for direct-infringement claims."). The Court will accordingly deny the Defendants' motions as to direct infringement.[3]

## III.   INDIRECT INFRINGEMENT

The second category of claims in the University's amended complaint is indirect infringement claims. The University pleads two types of indirect infringement: induced and contributory. The dispute as to the indirect infringement claims proceeds in two stages: first, whether the University's claims can be based on post-suit knowledge, and second, if the Defendants had sufficient knowledge of the patents, whether the substance of the allegations is adequate to state a claim upon which relief may be granted.

### A.   Induced and Contributory Infringement[4]

#### 1.   Induced Infringement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." A claim of induced infringement "requires knowledge

---

[3] The Defendants also argue that the Court should refuse to entertain the University's request for a permanent injunction because the University has not alleged that the balance of hardships warrants an injunction or that the public interest will not be disserved by an injunction. Although the amended complaint is stated at a high level of generality in keeping with Form 18, the Court finds that the University has adequately pleaded a permanent injunction as a form of requested relief. If the Defendants wish to revisit this issue at the summary judgment stage, when the Court would have the benefit of additional evidence as to whether either party would suffer irreparable harm in light of or absent an injunction, and how the public interest would be affected by an injunction, the Court will entertain such an argument at that time.

[4] The University's amended complaint alleges two types of indirect infringement: induced and contributory. Both types of indirect infringement require a valid direct infringement claim. *Bill of Lading*, 681 F.3d at 1333. Because the Court will permit the University's direct infringement claim to proceed, neither indirect infringement claim is precluded by the lack of a direct infringement claim.

that the induced acts constitute patent infringement," both by the direct infringer and the third party. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). Intent is an essential part of the knowledge requirement. "It must be established that the defendant possessed **specific intent** to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added) (internal quotation marks omitted). Essentially, "the inducer must have an affirmative intent to cause direct infringement. In the words of a recent decision, inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Id.* (internal quotation marks omitted).

Induced infringement claims must also allege facts indicating "**how** the sale of Defendants' products relates to the patented method referenced in the [plaintiff's] Patent." *E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH* ("*E.I. Du Pont*"), No. 11-773, 2012 WL 4511258, at *7 (D. Del. Sept. 28, 2012) (emphasis added). "Thus, to satisfy Rule 8 in the context of a claim for indirect [induced] infringement, a plaintiff would, at a minimum, have to identify who allegedly directly infringed and how, or would have to allege that use of some particular product necessarily infringed." *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-6635, 2013 WL 11569, at *3 (N.D. Cal. Jan. 1, 2013).

### 2.      Contributory Infringement

Contributory infringement is another form of vicarious liability for third-party infringement. Under 35 U.S.C. § 271(c):

> Whoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

"In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (internal quotation marks omitted).  The primary purpose of contributory infringement liability is to acknowledge "that one who makes a special device constituting the heart of a patented machine and supplies it to others with directions (specific or implied) to complete the machine is obviously appropriating the benefit of the patented invention."  *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (internal quotation marks omitted).  "To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *Bill of Lading*, 681 F.3d at 1337.

### 3.    Willful Blindness

The amended complaint also alleges "willful blindness" on the part of the Defendants with respect to third-party infringement using their products. Willful blindness appears to be pled as an alternative to induced infringement. A willful blindness theory requires allegations that a defendant deliberately avoided learning of the asserted patents and potential infringement of those patents. Claims for willful blindness involve "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 131 S. Ct. at 2070. "A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012).

### B.    Knowledge of the Asserted Patents and Alleged Infringement

Both induced and contributory infringement require knowledge of the patent at issue. In evaluating an indirect infringement claim a Court must first determine whether a defendant had adequate knowledge of the plaintiff's patent and the potential for the defendant's actions to infringe that patent. The University and the Defendants vigorously dispute the timing requirements for knowledge. Specifically, the parties disagree as to whether **pre-suit** knowledge of the patents is necessary to sustain a claim for direct infringement, or whether service of the complaint can constitute adequate notice for

subsequent indirect infringement claims.  This is a question of first impression in this District, and the Federal Circuit has not directly addressed it.

The Defendants argue that a plaintiff may not base a claim for indirect patent infringement on post-suit knowledge.  They argue that if the Court were to find "that a complaint provides sufficient knowledge for induced infringement[, it] would vitiate the Supreme Court's holding in *Global-Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement."  *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268-69 (M.D. Fla. 2012); *see also Select Retrieval, LLC v. Bulbs.com Inc.*, No. 12-10389, 2012 WL 6045942, at *6 (D. Mass. Dec. 4, 2012) (dismissing an indirect infringement claim on the grounds that "the filing of a law suit is not enough to support [a] claim for indirect infringement").  The Defendants anchor their analysis to a 2010 District of Delaware case in which the court found a complaint insufficient to establish notice.  *See Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("[K]nowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement.").

But *Xpoint* is clearly no longer the law in the District of Delaware.  Courts in that district have subsequently reached the opposite conclusion on the issue of notice.  *See, e.g.*, *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012) ("In sum, if a complaint sufficiently identifies . . . the patent at issue and the allegedly infringing conduct, a defendant's receipt of the of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*.").  In 2012, a District of Delaware court squarely rejected the conclusion

of the court in *Xpoint*. *See E.I. Du Pont*, 2012 WL 4511258, at *6. In *E.I. Du Pont*, the court was faced with this very question where the plaintiff filed an amended complaint alleging that the defendants had been on notice of the patent since at least the date of filing of the original complaint. *Id.* at *5-*6. The court held that "when it comes to knowledge of the patent-at-issue, a plaintiff's filing (and a defendant's receipt) of the complaint **are** facts that establish such knowledge – at least as of the date of the filing" for prospective relief. *Id.* at *6. In accordance with *E.I. Du Pont*, the University's amended complaint seeks relief only as of the date the University filed its original complaint.

This holding is more in keeping with the cases cited by the University that have found the filing of a complaint sufficient to provide notice for infringement alleged after the date of filing. The University notes that "[i]n the Northern District of California, courts have concluded that for a claim of induced infringement, knowledge of the patent can be established through the filing of the complaint, but the claim for induced infringement is limited to post-filing conduct." *Skyworks Solutions, Inc. v. Kinetic Techs. Inc.*, No. 14-00010, 2014 WL 1339829, at *3 (N.D. Cal. Apr. 2, 2014). Likewise, the Northern District of Illinois has held that courts "may infer actual knowledge of the patents at issue," for purposes of Rule 8, when a defendant "continues to sell the allegedly infringing product and encourages others to infringe," even if the defendant only "learn[ed] of the patent in connection with a lawsuit." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10-715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011). The Eastern District of Texas has adopted a similar approach. *See Achates Reference Pub.,*

*Inc. v. Symantec Corp.*, No. 11-294, 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013) (concluding "that there is no requirement to allege pre-suit knowledge of the patent to state a claim for contributory infringement" and observing that the defendant had not identified "any controlling authority suggesting that the Complaint itself is not sufficient to provide knowledge of the asserted patents for alleged acts of contributory infringement occurring during the pendency of the case"), *report and recommendation adopted by* No. 11-294, 2013 WL 693885 (E.D. Tex. Feb. 26, 2013).

The Court finds the reasoning of the Northern District of California, the Northern District of Illinois, and the Eastern District of Texas persuasive, and concludes that the notice pleading requirement for indirect infringement claims is satisfied by the filing of a complaint. The filing of a patent infringement complaint signals to a defendant that the plaintiff has concerns that the defendant's practice of offering or providing a service or product infringes on an existing patent. The plaintiff later amends the complaint to include more specific allegations, but the defendant has been made aware of the challenge and the asserted patent at issue no later than the date of the first complaint. Thus, even if the defendant was not aware of the existence of the asserted patent prior to the original complaint, once the first complaint is filed, the defendant is in a position to make an informed decision whether to risk the continued offer of the challenged product or service. As in *Skyworks*, *Trading Technologies*, and *Achates*, the Court concludes that a knowledge allegation based on the filing of a complaint – as alleged in the University's amended complaint – is sufficient only for indirect infringement occurring after the filing

date.   Therefore, the University has adequately pleaded knowledge of the Asserted Patents and alleged infringement occurring on and after November 5, 2014.

### C.      Amended Complaint Allegations

#### 1.      Willful Blindness

The amended complaint's allegations as to willful blindness are that, "on information and belief, [each] Defendant knows there is a high probability that the use of its LTE wireless communication systems constitutes direct infringement of the [Asserted Patents], but has taken deliberate action to avoid learning of these facts."   (Am. Compl. ¶¶ 33, 39, 45.)   The University offers no specific allegations as to what deliberate action the Defendants have taken.   This is not sufficient to meet the pleading requirements set forth in Rule 8, *Twombly*, and *Iqbal*.   While the University need not go into extensive detail about the particular circumstances of each action in order to survive a motion to dismiss, they must point to some type of action on the part of the Defendants from which a jury could conclude the Defendants engaged in willful blindness.   Instead, the amended complaint merely reiterates the *Global-Tech* willful blindness standard without adding any particulars about this case or these Defendants.   "Whether an act is willful is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances.   Here, there is no way to discern what constitutes the basis for the averment of" willful blindness.   *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-6638, 2012 WL 1831543, at *4 (N.D. Cal. May 18, 2012).   Thus, the University's amended complaint does not adequately plead a claim for willful blindness, and the Court

will grant the Defendants' motions to the extent they relate to claims for willful blindness.

## 2.      Indirect Infringement

Even though the University has adequately pleaded knowledge of the Asserted Patents to sustain claims arising after the date of the original complaint, knowledge is not the only pleading requirement to succeed on an indirect infringement claim.   As a preliminary matter, "Form 18 does not determine the sufficiency of pleading for claims of indirect infringement.   Rather, the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to such claims."   *Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012) (internal citation omitted); *Bill of Lading*, 681 F.3d at 1336 ("We agree with several district courts that have addressed this issue that Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement.").

The Defendants argue that the University's indirect infringement allegations are not adequately specific to meet the standard set by *Twombly* and *Iqbal*.   They maintain that there are no details in the amended complaint from which the Court could infer the Defendants' specific intent to infringe.   *See Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*, No. 12-1111, 2013 WL 6058472, at *1 n.5 (D. Del. Nov. 18, 2013) (dismissing plaintiff's indirect infringement claims – even though the Defendants knew of the patent and their customers' use of their products – because the complaint's

"allegations do not establish that [the defendant] intended that its customers infringe [the plaintiff]'s patents by using [the defendant]'s products").  Although the Defendants agree that "with regard to an allegation of post-suit induced infringement, . . . a plaintiff need not provide a detailed, step-by-step description of the alleged infringement in the complaint," the plaintiff must provide "some identification of **how** it is that use of the accused product infringes the patent . . . ."  *Versata Software, Inc. v. Cloud9 Analytics, Inc.*, No. 12-925, 2014 WL 631517, at *3 (D. Del. Feb. 18, 2014).

In this case, the amended complaint alleges, with respect to each of the Asserted Patents, that the Defendants "actively and knowingly **induced** infringement, and/or actively and knowingly **contributed** to acts of infringement."  (Am. Compl. ¶¶ 33, 39, 45 (emphasis added).)  The University claims that the Defendants achieved both types of indirect infringement "by selling communication services to customers that require the use of [the Defendants'] infringing LTE wireless communications systems and require that infringing methods be performed using those LTE wireless systems."  (*Id.*)  The amended complaint alleges that the Defendants knew of the Asserted Patents, knew their "LTE wireless communication systems are not staple articles or commodities of commerce suitable for substantial non-infringing use," and encouraged customers to participate in their infringement "through [] marketing, promoting, and advertising the use of [their] LTE network[s]."  (*Id.*)

The Defendants concede that they knew customers were using, and continue to use, their products.  They argue, however, that "[k]nowledge that a product is being used by a customer is not the same as knowledge that the customer is using the product in an

infringing manner." *Intellectual Ventures I LLC v. Bank of Am., Corp.*, No. 13-358, 2014 WL 868713, at *5 (W.D.N.C. Mar. 5, 2014).  While this may be true for inventions with plausible non-infringing uses, the Court finds that the Defendants' argument is a poor fit in this case.  Accepting as true – for the purposes of a motion to dismiss – the University's direct infringement allegations, the Court concludes any use of the Defendants' products and services by customers would have been an infringing use.  If the Defendants' method of providing wireless communication services to customers infringes on the Asserted Patents, it is a reasonable inference that customers' use of the Defendants' wireless networks would also infringe.

The amended complaint alleges that the University owned the Asserted Patents, and it describes the actions the Defendants took – marketing, selling, promoting – to distribute their products to customers.  In contrast with the University's willful blindness claims, for which the University alleges no actions that would constitute deliberate avoidance of knowledge, these induced and contributory infringement actions create a direct link through which the Defendants distributed their allegedly infringing products to customers to be used in an infringing manner.  If the Court assumes as true – as it must at the Rule 12(b)(6) stage – the University's allegation that the Defendants knew of the Asserted Patents and knew their products infringed on those patents, the decision to proceed with marketing and selling those infringing products gives rise to a reasonable inference of intent.  By alleging "that defendants actively entice[d] their customers through advertising, marketing and sales activity to use [their] infringing products as part of their own infringing products," the University has adequately pled an induced

infringement claim. *Zond, Inc. v. SK Hynix Inc.*, Nos. 13-11591 & 13-11570, 2014 WL 346008, at *5 (D. Mass. Jan. 31, 2014) (internal quotation marks omitted).

The amended complaint further alleges a contributory infringement claim: that the Defendants knew their products infringed the Asserted Patents, and their products required customers to use the LTE wireless communication networks, whose design directly infringed the University's patents. "Assuming that [the University] owns the [Asserted Patents] and that Defendants perform any one of the listed activities, the Court can conclude that [the University] has stated a plausible claim that entitles it to relief." *Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*, No. 09-148, 2010 WL 1409245, at *4 (E.D. Tex. Apr. 1, 2010). Although the University has not provided additional facts as to the precise way in which customers indirectly infringed the Asserted Patents, "those additional facts are not required by *Iqbal*. Moreover, it is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement." *Id.* This is not to say that the University's claims are particularly robust and comprehensive. Indeed, the University will need to elaborate on a number of details as this litigation proceeds. At this stage, however, the amended complaint contains enough detail to infer the University's basis for alleging induced and contributory infringement. Thus, "while plaintiff's complaint is rather conclusory, it is sufficient to withstand a motion to dismiss." *Rambus, Inc. v. Nvidia Corp.*, No 08-3343, 2008 WL 4911165, at *3 (N.D. Cal. Nov. 13, 2008).

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that the Defendants' Motions to Dismiss [Civ. No. 14-4666, Docket No. 29; Civ. No. 14-4669, Docket No. 38; Civ. No. 14-4671, Docket No. 33; Civ. No. 14-4672, Docket No. 31] are **GRANTED in part** and **DENIED in part** as follows:

1.    Defendants' motions are **GRANTED without prejudice** as to the University's willful blindness claims.

2.    Defendants' motions are **DENIED** in all other respects.

DATED:  September 29, 2015          ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                          Chief Judge
                                              United States District Court