# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Regents of the University of Minnesota, | Case No. 14-cv-4666 (JRT/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| AT&T Mobility LLC, | |
| Defendant. | |
| and | |
| Ericsson, Inc., and Alcatel-Lucent USA Inc., | |
| Defendant-Intervenors. | |

| | |
|---|---|
| Regents of the University of Minnesota, | Case No. 14-cv-4669 (JRT/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Sprint Solutions, Inc. and Sprint Spectrum, L.P., | |
| Defendants. | |
| and | |
| Ericsson, Inc., Alcatel-Lucent USA Inc., and Nokia Solutions and Networks US LLC, | |
| Defendant-Intervenors. | |

| | |
|---|---|
| Regents of the University of Minnesota,<br><br>    Plaintiff,<br><br>v.<br><br>T-Mobile USA, Inc.,<br><br>    Defendant.<br><br>and<br><br>Ericsson, Inc., Alcatel-Lucent USA Inc., and Nokia Solutions and Networks US LLC,<br><br>    Defendant-Intervenors. | Case No. 14-cv-4671 (JRT/TNL)<br><br>**REPORT & RECOMMENDATION** |
| Regents of the University of Minnesota,<br><br>    Plaintiff,<br><br>v.<br><br>Cellco Partnership d/b/a Verizon Wireless,<br><br>    Defendant.<br><br>and<br><br>Ericsson, Inc., and Alcatel-Lucent USA Inc.,<br><br>    Defendant-Intervenors. | Case No. 14-cv-4672 (JRT/TNL)<br><br>**REPORT & RECOMMENDATION** |

This matter is before the Court on Defendants' Motion to Reduce Asserted Claims. (Case No. 14-cv-4666, ECF No. 155; Case No. 14-cv-4669, ECF No. 167; Case No. 14-cv-4671, ECF No. 158; Case No. 14-cv-4672, ECF No. 164). These motions were referred to the undersigned for a report and recommendation to the Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636. The Court held a hearing on October 26, 2016 and heard argument from all parties. (ECF No. 185).[1] In the continued interests of efficiency and to ensure these related cases are adjudged in the same manner, the Court addresses the motions—which are identical in each case—in a single report and recommendation. For the reasons set forth below, this Court recommends that the motions be denied.

## I.   BACKGROUND

Plaintiff Regents of the University of Minnesota ("the University") filed suit accusing Defendants of infringing five patents across two patent families. Put simply, the University alleges that Defendants infringe upon its patents via their 4G LTE networks. Patent Nos. 7,251,768 ("'768 patent") and RE45,230 ("'230 patent") relate to error coding and linear precoding, techniques that are used to ensure data transmission reliability. The other patent family, Nos. 88,718,185 ("'185 patent"), 8,774,309 ("'309 patent"), and 8,588,317 ("'317 patent"), relates to channel and carrier frequency offset estimation, which permits mobile phones to measure and compensate for certain types of inaccuracies in data transmission.

---

[1] For references to documents filed across the four cases, the Court only references the case first filed, Case No. 14-cv-4666 (JRT/TNL). If necessary to address specific filings in a particular case, the Court cites the case number along with its electronic docket number.

The five patents contain 184 total claims, and the University is currently asserting 129 separate infringement claims. Regarding the '768 and '230 patents, the University initially asserted 10 of the 28 claims in the '768 patent (4 independent claims and 6 dependent claims) and 58 of the 77 claims in the '230 patent (9 independent claims and 49 dependent claims). For the other patent family, the University initially asserted 8 of the 20 claims in the '317 patent (2 independent claims and 6 dependent claims), 27 of 30 claims in the '185 patent (3 independent claims and 24 dependent claims), and 25 of the 29 claims in the '309 patent (9 independent claims and 16 dependent claims). The University contends that each of the claims represents a distinct invention and that many of the claims provide unique issues of infringement and validity.

After discussion among the parties, the University has agreed to reduce its 129 claims down to 45 claims before claim construction. (*See, e.g.*, ECF No. 173, at 3). The University further agrees to reduce down to 20 claims shortly after the close of fact discovery. (*See, e.g.*, ECF No. 173, at 3). Defendants contend that case law demands the University immediately reduce its claims even further to 15.[2]

## II.  ANALYSIS

"The Federal Circuit has held that district courts possess the authority and discretion to reasonably limit the number of claims asserted in patent infringement actions, subject to due process considerations." *Select Comfort Corp. v. Gentherm, Inc.*,

---

[2] Defendants, through Ericsson, have demanded different numbers throughout the parties' discussions. *See, e.g.*, Decl. of Nicholas Mathews, ECF No. 158, at Ex. 2 (Ericsson demanding reduction to 50 claims on March 30, 2016), at Ex. 5 (Ericsson demanding reduction to 64 claims on April 13, 2016), at Exs. 4, 6, 8 (Ericsson demanding reduction to 24 claims, with no more than 8 claims per patent, on August 31, 2016).

2014 WL 4976586, at *1 (D. Minn. Oct. 3, 2014) (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011)). A party asserting patent infringement must be permitted sufficient discovery to allow it "to determine whether its asserted claims raise separate issues of infringement in light of [a defendant's] accused products and defenses," necessarily requiring discovery into a defendant's infringement and invalidity contentions prior to claim reduction. *Arctic Cat, Inc. v. Polaris Indus. Inc.*, 2015 WL 3756409, at *4 (D. Minn. June 12, 2015) (citation omitted). However, "waiting to reduce claims until after claim construction would be too late in the litigation process. Indeed, the vast majority of courts that have ordered claim reduction have done so prior to claim construction." *Id.* (citations omitted). If a district court reduces claims, it must leave "open the door for the assertion of additional claims on a showing of need." *Stamps.com Inc. v. Endicia, Inc.*, 437 Fed. Appx. 897, 902 (Fed. Cir. 2011) (discussing *In re Katz*, 639 F.3d at 1309–12).

Here, Defendants assert primarily that *Select Comfort* stands for the proposition that the University must limit itself to 15 infringement claims before claim construction, and even fewer claims come trial. The Court disagrees. In *Select Comfort*, Plaintiff Select Comfort Corp. brought suit seeking declarations of non-infringement and invalidity as to certain patents held by Defendant Gentherm, Inc., with Gentherm counterclaiming for patent infringement as to five of its patents.[3] *Select Comfort*, 2014 WL 4976586, at *1. Select Comfort then moved "to limit the number of asserted claims arising under

---

[3] Defendant Gentherm, Inc. asserted seventy claims across five patents for one accused product. (*See* Select Comfort's Mem. in Supp. of Mot. to Limit the Number of Asserted Claims, ECF No. 54, Case No. 13-cv-2314 (SRN/JJK)).

5

Gentherm's five patents to no more than ten claims." *Id.* Gentherm was "generally amenable to some limitations, it propose[d] a limit of up to 15 claims, consisting of up to four representative claims from each of the asserted patents." *Id.* While the court agreed that it had authority to limit the number of asserted claims "in order to streamline cases and to enhance judicial efficiency," it rejected Select Comfort's proposal and instead adopted Gentherm's proposal of 15 claims total, with up to four representative claims per patent. *Id.* at *2. Thus, rather than serving as a hard limit on the number of patent infringement claims that can be presented entering claim construction, *Select Comfort* merely involved a choice between two proposals proffered by litigating parties.

Here, the University's suit is for patent infringement claims relating to 4G LTE transmissions, an extremely complicated technology that is ubiquitous in modern life. Without better understanding which of the University's claims are viable and which are not— an understanding that will only be gained through further fact discovery that is far from being concluded—the Court has a paucity of information against which to gauge what an appropriate number of claims should be in this case. *Cf. In re Katz*, 639 F.3d at 1313 n.9 ("[A] claim selection order could come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses."). To grant the relief requested by Defendants, the Court would not be partaking in a well-reasoned procedure under a workable standard, but would instead be engaging in metaphysical conjecture to choose a number that sounds reasonable as compared to numbers in other cases—cases that do not involve subject

6

matter as technically complicated or pervasive as that here.[4] To limit the University to 15 claims at this time, as Defendants propose, would do nothing more than impose an artificial reduction on the number of claims in this suit with insufficient basis in fact or law. As a result, the Court finds the University's proposal reasonable because it strikes a balance between keeping these cases manageable, while also preserving its opportunity to develop its claims. At the same time, the University shall take heed that 45 claims or even 20 would impose a heavy burden on the parties and the Court. Therefore, the University should utilize all opportunities to reduce such claims if and when reasonable.

## III.  RECOMMENDATION

Based on the foregoing and all of the files, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Reduce Asserted Claims, (Case No. 14-cv-4666, ECF No. 155; Case No. 14-cv-4669, ECF No. 167; Case No. 14-cv-4671, ECF No. 158; Case No. 14-cv-4672, ECF No. 164), be **DENIED** and Plaintiff's proposal be **ADOPTED** as set forth herein. Subject to any further order of the Court, Plaintiff shall reduce the number of asserted claims to no more than 45 before the claim construction process begins and shall reduce further to no more than 20 claims shortly after the close of fact discovery or after the Court has issued its Claim Construction Order, whichever is later in time.

[Signature on next page.]

---

[4] *Select Comfort*, the case Defendants rest their argument upon, involved temperature-adjustable beds. It can scarcely be argued that heated mattresses and the 4G LTE network inhabit the same universe of complexity.

Date: December 13, 2016           *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

*Univ. of Minnesota v. AT&T*
Case No 14-cv-4666 (JRT/TNL)

*Univ. of Minnesota v. Sprint*
Case No 14-cv-4669 (JRT/TNL)

*Univ. of Minnesota v. T-Mobile*
Case No 14-cv-4671 (JRT/TNL)

*Univ. of Minnesota v. Verizon*
Case No 14-cv-4672 (JRT/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.