# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Regents of the University of Minnesota,

       Plaintiff,

v.

AT&T Mobility LLC,

       Defendant.

and

Ericsson, Inc., and Alcatel-Lucent USA Inc.,

       Defendant-Intervenors.

Case No. 14-cv-4666 (JRT/TNL)

**ORDER**

---

Regents of the University of Minnesota,

       Plaintiff,

v.

Sprint Solutions, Inc. and Sprint Spectrum, L.P.,

       Defendants.

and

Ericsson, Inc., Alcatel-Lucent USA Inc., and Nokia Solutions and Networks US LLC,

       Defendant-Intervenors.

Case No. 14-cv-4669 (JRT/TNL)

**ORDER**

---

Regents of the University of Minnesota,

     Plaintiff,

v.

T-Mobile USA, Inc.,

     Defendant.

and

Ericsson, Inc., Alcatel-Lucent USA Inc.,
and Nokia Solutions and Networks US
LLC,

     Defendant-Intervenors.

Case No. 14-cv-4671 (JRT/TNL)

**ORDER**

Regents of the University of Minnesota,

     Plaintiff,

v.

Cellco Partnership d/b/a Verizon Wireless,

     Defendant.

and

Ericsson, Inc., and Alcatel-Lucent USA
Inc.,

     Defendant-Intervenors.

Case No. 14-cv-4672 (JRT/TNL)

**ORDER**

Before the Court are two motions in the above-named cases. First, Plaintiff

Regents of the University of Minnesota ("the University") moves to compel discovery

responses by Defendants Sprint Solutions, Inc. and Sprint Spectrum, L.P. (collectively,

"Sprint"). (ECF No. 230, Case No. 14-cv-4669). Second, Defendant-Intervenor Ericsson, Inc. moves to stay this matter pending a decision by the United States Patent and Trademark Office ("USPTO") on petitions for *inter partes* review ("IPR"). (ECF No. 218, Case No. 14-cv-4666; ECF No. 248, Case No. 14-cv-4669; ECF No. 240, Case No. 14-cv-4671; and ECF No. 239, Case No. 14-cv-4672). The Court held a hearing on April 27, 2017 and heard argument from all parties. (ECF No. 236).[1] In the interests of judicial efficiency and to ensure these related cases are adjudged in the same manner, the Court addresses the outstanding disputes in a single order.

## I.   DISCOVERY DISPUTE – SPRINT

The University served interrogatories and document requests on Sprint seeking technical details relating to the configuration and operation of its LTE base stations. Sprint responded to those interrogatories and document requests, but only with respect to the base stations supplied by Intervenor-Defendants Ericsson, Alcatel-Lucent USA Inc., and Nokia Solutions and Networks US LLC. Sprint did not provide information for its LTE base stations supplied by Samsung and Huawei. The University contends that because its claims concern the entirety of Sprint's LTE network, Sprint has wrongfully withheld technical specifications of its Samsung and Huawei LTE base stations. The University moves for an order compelling Sprint to supplement its discovery responses to include information related to its Samsung and Huawei LTE base stations. Sprint responds that it has produced the documents the University seeks, while simultaneously

---

[1] For references to documents filed across the four cases, the Court only references the case first filed, Case No. 14-cv-4666 (JRT/TNL). If necessary to address specific filings in a particular case, the Court cites the case number along with its electronic docket number.

claiming that it should not be required to produce the documents the University seeks. (*See, e.g.*, ECF No. 254, at 4, Case No. 14-cv-4669). For the reasons below, the University's motion is granted.

Under the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Once a threshold showing of relevancy is established by the discovering party, the resisting party must show specifically how the discovery is not relevant or is overly broad, burdensome, or oppressive. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). This Court "has considerable discretion in granting or denying discovery requests." *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 534 (D. Minn. 2008).

This case revolves around the University's allegation that Defendants infringe on certain of the University's patents by reason of Defendants' LTE wireless communications networks. Included in Sprint's LTE wireless communications network

are LTE base stations that transmit the 4G LTE wireless signals. While certain LTE base station manufacturers have intervened in this case—Ericsson, Alcatel-Lucent, and Nokia—the University has not limited its claims only to those base stations supplied by the three intervenor-defendants. If Sprint's LTE base stations, including those supplied by Samsung and Huawei, operate as the University contends,[2] then the information concerning those base stations is relevant and, therefore, discoverable. Indeed, Sprint has provided the same information as pertains to LTE base stations manufactured by Ericsson, Alcatel-Lucent, and Nokia.

Sprint contends that the University's infringement contentions fail to provide Sprint notice that Samsung and Huawei LTE base stations are at issue in this case, thus rendering any discovery related to said LTE base stations irrelevant. This argument is unavailing. And, while not dispositive of the motion as relates to Sprint, none of Sprint's co-defendants have withheld discovery on this basis. (ECF No. 232, at 7, Case No. 14-cv-4669). As already explained in this case,

> Infringement contentions serve "to provide *notice* to the opposing party of contentions and defenses." *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, Case No. 12-cv-2706 (MJD/LIB), 2014 WL 2945877, at *4 (D. Minn. Apr. 28, 2014), *aff'd in relevant part*, 2014 WL 2946456 (D. Minn. June 30, 2014). "Claim charts must be sufficiently specific only 'to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement and raise a reasonable inference that all accused products infringe.'" *Bombardier*, 2014 WL 2945877, at *4 (quoting *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, Case No. CV 12—01971-CW(KAW), 2013 WL 3361241 (N.D. Cal. July 3, 2013)). "The purpose of a claim chart is to set forth a party's infringement contentions with reasonable particularity so that the parties can focus and advance

---

[2] As noted by the University throughout its briefing and at the hearing, the alleged infringing LTE base stations operate in transmission modes 2 through 4 of the LTE Standard.

discovery." *Stratasys, Inc. v. Microboards Tech. LLC*, Case No. 13-cv-3228 (DWF/TNL), 2015 WL 3869672, at *2 (D. Minn. June 23, 2015).

*Regents of the Univ. of Minnesota v. AT&T Mobility LLC*, 2016 WL 7972908, at *4 (D. Minn. Dec. 13, 2016), (ECF No. 188, at 11–12) (ruling on Defendants' motion for order compelling University to identify infringing LTE user equipment). Sprint cannot say that it is not on notice of the University's contentions. The University is alleging that components of the LTE standard infringe on its patents, including LTE base stations. From the University's assertions, all devices that transmit Defendants' LTE networks operate under the same standards. Thus, all LTE base stations would infringe upon the University's patents.

Sprint relies heavily on the University's language in its infringement claim chart, asserting that the University has limited its claims to LTE base stations supplied by Ericsson, Alcatel-Lucent, and Nokia. In looking at the entirety of that language, Sprint's claim falls short. That language is as follows:

> To the extent the preamble is a limitation, Defendant's LTE wireless network has included and continues to include wireless communication devices, as explained below and in connection with each recited limitation. For example, Defendant's LTE network includes eNBs (supplied by Ericsson, ALU, and NSN) that transmit through antennas to UEs . . . .

(Decl. of Conrad A. Gosen, ¶ 3, ECF No. 234, Case No. 14-cv-4669; Gosen Decl. Ex. A, ECF No. 235, Case No. 14-cv-4669; *see also* Declaration of George R. Spatz ¶¶ 7–11, Exs. 4–8, ECF No. 255, Case No. 14-cv-4669). The infringement claim chart then explains how LTE base stations (eNBs) host various functions. (Gosen Decl. Ex. A, at 1). Following that, the University asserts: "Defendant's LTE network has included and

continues to include eNBs that have an error-control coder that applies an error correction code to produce an encoded data stream of information bearing symbols." (Gosen Decl. Ex. A, at 2). While the University provided an example of LTE base stations, the language throughout its infringement claim chart is not limited in the manner Sprint contends. Rather, the University continues to challenge Sprint's *entire* LTE communication system, not just particular LTE base stations. (Gosen Decl. Ex. B, at 1). Correspondingly, the University's discovery requests are also not limited only to those LTE base stations provided by Ericsson, Alcatel-Lucent, and Nokia. For example, in Interrogatory No. 3, the University seeks "all techniques used in [Sprint's] LTE Network base stations to determine or estimate a carrier frequency offset relating to communications that comply with the LTE Physical Layer Specifications." (Gosen Decl. Ex. C, at 10). This language has no limitation to only the "LTE Network base stations" provided by Ericsson, Alcatel-Lucent, and Nokia.

Therefore, based on the foregoing, the University's motion to compel is granted. Sprint shall supplement its discovery responses within 21 days.

## II. MOTION TO STAY – ERICSSON

On March 28–30, 2017, Ericsson submitted petitions to the USPTO for IPR of the five patents at issue in this suit, covering all of the forty-five claims asserted by the University. (ECF No. 220, at 6–7). Defendant-Intervenor Ericsson moves for a stay of this case pending the USPTO's decision on whether to institute IPR. For the reasons below, the Court grants Ericsson's motion for a stay in this matter.

It is well recognized that the District Court has "the inherent power to stay the proceedings of an action, so as to control [its] docket, to conserve judicial resources, and to provide for the just determination of cases which pend before [it]." *Armstrong v. Mille Lacs Cnty. Sheriff's Dept.*, 112 F. Supp. 2d 840, 843 (D. Minn. 2000) (citing *Landis v. American Water Works & Electric Co.*, 299 U.S. 248, 254–55 (1936)). This power includes "the authority to order a stay of litigation pending the reexamination of a patent by the PTO." *Polaris Indus., Inc. v BRP U.S. Inc.*, Case No. 12-cv-1405 (ADM/SER), 2012 WL 5331227, at *1 (D. Minn. Oct. 29, 2012). "A district court is not required to stay judicial resolution merely because reexamination proceedings have been instituted; rather the decision whether to grant the stay is a matter for the discretion of the district court." *Regalo Int'l, LLC v. DEX Prods., Inc.*, Case No. 08-cv-4206 (ADM/AJB), 2009 WL 2951107, at *1 (D. Minn. Sept. 9, 2009). "Yet courts 'routinely' grant such stays where the circumstances warrant." *Card Tech. Corp. v. DataCard Corp.*, Case No. 05-cv-2546 (MJD/SRN), 2007 WL 551615, at *2 (D. Minn. Feb. 21, 2007) (quoting *CNS, Inc. v. Silver Eagle Labs, Inc.*, Case No. 04-cv-968 (MJD/JGL), 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004)).

> In determining whether to grant a stay pending IPR, district courts generally consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in the litigation and facilitate the trial of that case; and (3) whether discovery is complete and a trial date is set."

*Arctic Cat Inc. v. Polaris Indus. Inc.*, Case Nos. 13-cv-3579 (JRT/FLN), 14-cv-3386 (JRT/FLN), 14-cv-3412 (JRT/FLN), 2015 WL 6757533, at *2 (D. Minn. Nov. 5, 2015)

(quoting *Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, Case No. 12-cv-2730 (ADM/AJB), 2013 WL 4483355, at *1 (D. Minn. Aug. 20, 2013)).

## A. Judicial Estoppel

Before looking at the merits of Ericsson's requested stay, however, the Court first looks at the University's argument that Ericsson is estopped from even requesting the stay in the first place.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000). Judicial estoppel exists to "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotations and citations omitted). Courts rely on several factors to inform the decision whether to apply the doctrine in a particular case: (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750.

Ericsson moved to intervene in this case on January 21, 2016. (ECF No. 68). The Court held a hearing on March 7, 2016 and, at that hearing, Ericsson indicated it would

"slot right into the schedule" already established in the case, that it would not "ask for any postponement of trial or *Markman*." (ECF No. 110, at 20:16–25). Before the Court could issue its decision, however, the parties stipulated to Ericsson's intervention. (ECF No. 128). Pursuant to the parties' stipulation, Ericsson's motion to intervene was granted on March 30, 2016. (ECF No. 131). That same day, the Court issued its Amended Scheduling Order, (ECF No. 133), granting modest one or two week extensions to certain deadlines to accommodate Ericsson's intervention. (*Compare* ECF No. 133 *with* ECF No. 56).

Since Ericsson's intervention, there have been no pertinent modifications of the schedule in this case. In fact, the parties filed their claim construction statements, (ECF No. 190), and *Markman* briefs, (*see, e.g.*, ECF Nos. 212, 214), in a timely manner. This shows that Ericsson's intervention did not affect the parties' ability to comply with deadlines, as all parties were able to meet said deadlines without any extensions or delays. Pursuant to the case schedule and the parties' filings, a technology tutorial was scheduled for May 2, 2017 and a claim construction was scheduled for shortly thereafter, on May 11, 2017. (*See* ECF No. 230). Those hearings were cancelled, however, at the Court's discretion pending the disposition of Ericsson's motion to stay. (ECF No. 230). Thus, the Court does not find, as the University suggests, that Ericsson's current motion for a stay is clearly inconsistent with its earlier position that it would abide by the deadlines in this case. Rather, Ericsson has abided by all deadlines set by the Court.

Nor does Ericsson moving for a stay automatically invalidate its prior position that it would abide by deadlines in this case. As all parties in this action are well aware,

Ericsson may seek IPR within one year of being served with a complaint alleging patent infringement. 35 U.S.C. § 315(b) ("An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."). Ericsson, who intervened in this case on March 30, 2016, filed its IPR petitions within the one-year statutory deadline. Even though the University suggests Ericsson may have been able to file its IPR petitions earlier than March 2017, there is nothing in the law that *requires* Ericsson to file its IPR petitions earlier. The Court will not find under the specific facts of this case that an intervening party is barred from asking for a stay related to a statutorily-provided action—IPR— merely because that party indicated when seeking intervention that it would work within the schedule and not ask for any postponement of trial or *Markman*, particularly where that party has abided by all deadlines since its intervention. Therefore, Ericsson's motion is not barred by the doctrine of judicial estoppel.

Because Ericsson's motion is not barred by judicial estoppel, the Court now turns to the factors for determining whether to grant a stay pending IPR.

## B.  Undue Prejudice or Clear Tactical Disadvantage

"In evaluating whether a plaintiff will be unduly prejudiced, a court may deny a request for a stay where the movant inexplicably or unjustifiably delayed seeking reexamination, or where the stay will merely delay the proceedings." *Intellectual Ventures II LLC v. U.S. Bancorp*, Case No. 13-cv-2071 (ADM/JSM), 2014 WL 5369386, at *4 (D. Minn. Aug. 7, 2014) (citing *Ecolab, Inc. v. FMC Corp.*, Case No. 05-cv-831

(JMR/FLN), 2007 WL 1582677, at *1 (D. Minn. May 30, 2007)). "Courts may also refuse to order a stay where the plaintiff cannot be fully compensated by money damages for the alleged infringement." *Intellectual Ventures II LLC*, 2014 WL 5369386, at *4 (citing *Polaris Indus., Inc.*, 2012 WL 5331227, at *2). Even though a stay pending IPR of patents will delay a suit, "that alone does not establish undue prejudice," particularly given "the benefits to be gained from waiting for the PTO to exercise its expertise on the . . . matter." *Intellectual Ventures II LLC*, 2014 WL 5369386, at *4 (citations omitted); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *3 (N.D. Cal. Mar. 16, 2006) ("[T]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice.").

Here, Ericsson has not delayed seeking reexamination. As noted above, Ericsson abided by the timelines for IPR as provided by 35 U.S.C. § 315(b). Up until October 24, 2016, the University was asserting 129 claims for infringement. On October 24, 2016, two days before a hearing on Defendants' motion to reduce the University's claims, the University reduced its 129 claims to 45 claims.[3] The Court accepts Ericsson's arguments that preparing IPR petitions is "a substantial undertaking." (ECF No. 235, at 5) (explaining Ericsson has submitted six total IPR petitions, "encompassing over two thousand pages of analysis and evidence"). Even if Ericsson could be considered to have delayed by waiting until its statutory deadline in seeking IPR, such a delay is explicable where so many claims are at issue. Further, Ericsson moved this Court for a stay less than

---

[3] The University has been ordered to further reduce to 20 claims shortly after the close of fact discovery or after the Court has issued its Claim Construction Order, whichever is later in time. *Regents of the Univ. of Minnesota v. AT&T Mobility LLC*, 2017 WL 102962, at *1 (D. Minn. Jan. 10, 2017), (ECF No. 197), *adopting report and recommendation*, 2016 WL 7670604, (ECF No. 189).

two weeks after seeking IPR. These actions do not evince any dilatory tactics by Ericsson.

The University is a non-practicing entity, unlike Ericsson and the other defendants, and does not compete with Defendants' business operations. The University does not manufacture LTE base stations or other components of LTE wireless communication networks. Rather, the University is in the business of teaching and academic research, which discoveries may have commercial applications. Thus, a stay does not place the University's interests at risk in the sense that it will lose further sales, profits, or market share by reason of Defendants' alleged patent infringement. Instead, a stay in this case would increase the University's damages should it prevail on its claims by reason of Defendants' additional infringing sales and profits, as well as accumulating interest on damages. Moreover, it is arguable that the University's interests and Defendants' interests align insofar as the larger profit made by these sophisticated and capitalized Defendants increases the damages and royalties the University seeks to recover. Absent greater concern of monetary harm faced by the University if a stay were to be implemented, the Court finds no undue prejudice. *Intellectual Ventures II LLC*, 2014 WL 5369386, at *5 (finding no prejudice where plaintiff "does not make or sell any products that compete with [defendant]" where "the availability of monetary damages can ameliorate potential undue prejudice"); *cf. Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) (noting that "money damages is an adequate remedy for any delay in redress").

The University indicates its litigation efforts would face a "substantial disruption" if Ericsson's request for a stay were granted. (ECF No. 231, at 23). The Court is not persuaded that the disruption of this litigation represents *undue prejudice*. To be sure, a stay in any case prejudices the parties in that no party moves closer to resolution of the claims at issue. This is less true here, where the stay would be for purposes of possible IPR review. The IPR process can, as discussed below, serve to simplify the issues in this case. Thus, it is not as though a stay in this case constitutes wasted time for the parties. To the contrary, the parties' dispute shifts temporarily from this forum to the USPTO. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("The present stay has thus not terminated the action but has merely shifted to the PTO an issue (patent claim validity) involved in the dispute before the district court."). And much of the discovery proffered in this case may prove helpful for the arguments presented before the USPTO.

The University also indicates that it will incur substantial costs in "restarting" this case following a stay. The Court is not convinced that this case and a possible IPR review are wholly independent from one another. Rather, there will be substantial overlap in the matters addressed. As such, the parties, their attorneys, and their experts should not find it difficult to stay abreast of the subject matter at issue and the developments in this case. To be sure, as possible with any stay, a restart could create challenges. The Court, however, could always amend its scheduling order to allow the parties extra time to resume this litigation.

The Court finds a stay would not unduly prejudice or present a clear tactical disadvantage to the University. Accordingly, this factor weighs in favor of Ericsson's request for a stay.

## C. Simplification of Issues

"One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould*, 705 F.2d at 1342. Courts look at "numerous benefits" to staying litigation pending IPR, including:

> (1) all prior art presented to the Court will have been first considered by the PTO, with its particular expertise;
> (2) many discovery problems related to the prior art can be alleviated by the PTO examination;
> (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed;
> (4) the outcome of the re-examination may encourage a settlement without the further use of the Court;
> (5) the record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation;
> (6) issues, defenses and evidence will be more easily limited in pre-trial conferences after a reexamination; [and]
> (7) the cost will likely be reduced both for the parties and the Court.

*Intellectual Ventures II LLC*, 2014 WL 5369386, at *5–*6 (citations omitted). Moreover, IPR proceedings estop parties from arguing that a patent is "invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review," 35 U.S.C. § 315(e)(2),[4] or from arguing different meanings of patent terms, *CVI/Beta*

---

[4] While not dispositive of the current motion before the Court, Ericsson represented at the hearing that all defendants and defendant-intervenors agree to be bound by the IPR proceedings. Ericsson also

*Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) (noting that "statements made during prosecution or reexamination . . . may commit [an applicant for a patent or a patent owner] to a particular meaning for a patent term, which meaning is then binding in litigation.").

Here, the University's patents relate to a portion of the LTE wireless communications network which, as previously noted by the Court, cover "extremely complicated technology that is ubiquitous in modern life." *Regents of the Univ. of Minnesota*, 2016 WL 7670604, at *2, (ECF No. 189, at 6). While the parties were ready for a *Markman* hearing to present prior art statements and engage in claim construction, the USPTO, should it agree to institute IPR, has the unique expertise to make determinations as to the highly complex patents at issue. As such, entering a stay—where the final outcome may be an IPR in which some issues could be finally decided—has substantial benefits to the Court, particularly in resolving this litigation. Even if no IPR proceeding results, the lawsuit still benefits from the knowledge that this litigation will be the trial forum that determines the fate of the University's patents as they relate to Defendants.

This case has three months of fact discovery left, followed by expert discovery, which will undoubtedly be important to this highly-complex case. Given the importance and complexity of the remaining discovery, the parties will assuredly be ready to devote substantial time and resources to this litigation. If the USPTO can simplify the issues in this case should it institute IPR, the parties would likely benefit by being able to focus

represented that the parties would agree to memorialize this in a public filing. The Court encourages Defendants and Defendant-Intervenors to file publicly any such agreement on the docket.

their efforts at a subset of the discovery they now hope to complete. Moreover, pausing before the final push in discovery may allow the parties time for introspection that permits reevaluation of how discovery efforts can be made more efficient and targeted. Possible simplification of discovery efforts—and possibly even discovery disputes by proxy—in a case as complex as this outweighs the inconvenience of a stay.

The Court finds a stay could simplify the issues relating to the underlying patents at issue as well as possible disputes in this litigation related to the pre-trial discovery process. As such, any detriments caused by a stay is outweighed by the potential savings in time and resources expended by the parties and the Court in continued litigation. Accordingly, this factor weighs in favor of Ericsson's request for a stay.

### D. Stage of Litigation

As indicated above, the parties have been on the eve of their *Markman* hearing. Discovery has about three months remaining, with expert discovery to follow. Only two depositions have been completed. The case is to be trial-ready by May 29, 2018.

As noted by the University, "courts in this district frequently deny requests for a stay as premature where such requests are made prior to a decision by the PTO regarding whether it will grant review of a party's IPR petition." *Stratasys, Inc. v. Microboards Tech., LLC*, Case No. 13-cv-3228 (DWF/TNL), 2015 WL 1608344, at *2 (D. Minn. Apr. 10, 2015). In *Stratasys*, the court found that it was "speculative whether the PTO will even grant review." *Id.* Therefore, the *Stratasys* court concluded it was "premature to decide whether a stay is appropriate." *Id.* It also found that, with fact discovery ending approximately one month later and significant discovery already underway, there was

"little point in staying discovery and related issues that will conclude in the near future." *Id.* An additional factor the *Stratasys* court considered was that the parties would know whether IPR review would be instituted in approximately two months. *Id.* When considering these factors in combination, the *Stratasys* court found that "[p]roceeding over such a short time period for the next few months will not unduly prejudice either party." *Id.* The *Stratasys* court also "decline[d] to set a claim construction hearing at this time in light of the pending decision by the PTO regarding whether to grant Defendant's IPR Petitions." *Id.* at *4 n.3.

This case is distinguishable from *Stratasys*. Ericsson argues that, statistically, there is a 65% likelihood for its petitions to institute IPR by the USPTO. The University asserts that, due to a sovereign immunity defense, there is no likelihood that Ericsson's IPR petitions will institute review of the patents. In contrast to the known statistical probability of 65% proffered by Ericsson, the University's sovereign immunity argument is not comparably predictable or quantifiable. Indeed, as discussed by the parties at the hearing, there is no law directly on point as to whether sovereign immunity is waived where a patent holder initiated suit prior to an IPR proceeding. Thus, while the USPTO instituting IPR proceedings is speculative, it is not so speculative so as to warrant no consideration and a full-fledged continuation of this suit. Rather, as discussed above, a stay has substantial benefits.

Furthermore, this case has not progressed as far as *Stratasys*. This case has three months of discovery left, the entirety of expert discovery, and no looming trial date. Given the importance of the remaining discovery, the parties are undoubtedly ready to

devote substantial time and resources into it. If the USPTO can simplify the issues in this case should it institute IPR, the parties would likely benefit by being able to focus their efforts on a subset of the discovery that they now hope to complete. Moreover, the parties may use the stay as an opportunity to ensure that their discovery efforts are efficient and targeted.

The University also cites *Dane Technologies*, in which the court stated:

> [Defendant] asks the Court to stay this litigation based only upon its decision to petition the PTO to initiate an inter partes review. [Defendant] argues that the PTO has granted inter partes review petitions in approximately 89% of cases since the AIA became effective in 2011. Thus, [Defendant] argues, their motion to stay should be granted on the assumption that the PTO will review the case. This argument is too speculative. After a petition requesting inter partes review is filed, the PTO has six months to decide whether to review a disputed patent. *See* 35 U.S.C. § 314(b). Before the PTO makes this decision the Court can only speculate as to whether the PTO will review a patent and to what extent. Considering the administrative framework, the Court would be waiting six months, ending in approximately December 2013, for the PTO to decide if it will initiate an inter partes review. At that point, if the PTO declines to hear the case, [Plaintiff's] litigation will have been delayed for no perceivable benefit. Furthermore, [Defendant] waited approximately seven months into the litigation, until May and June of 2013, before seeking inter partes review of two out of three of the disputed patents. Thus, because the PTO's review of [Defendant's] petitions is speculative, and because the scope of the PTO's possible review is also speculative, the first factor weighs in favor of [Plaintiff].

*Dane Techs., Inc.*, 2013 WL 4483355, at *2 (internal citations omitted).

But, there is a perceivable benefit in this case to staying litigation, unlike in *Dane Technologies*. If a stay is not instituted, the parties will present their technology tutorial and then claim construction arguments to the Court. Claim construction will then be taken under advisement and ruled upon. While that matter is under advisement, IPR

proceedings could commence. Thus, the Court faces the possibility of a conflicting claim construction order and IPR results. Such a result is not remote, particularly with forty-five claims at issue across five patents and eighteen claim terms necessitating Court decision. The difficulty of untangling such a Gordian knot can be avoided if the Court institutes a stay at this stage of litigation to see the outcome of Ericsson's IPR petitions. This is particularly true where the parties are likely to have a decision from the USPTO— either rejecting IPR or instituting it—within a time period where the Court might or might not have issued its claim construction order. Finally, with due respect to the issues and potential damages in *Dane Technologies*, the breathtaking scope of the University's claims implicating currently ubiquitous 4G LTE technology, asserted across 45 claims, could well correspond to commensurately colossal savings and efficiencies that weigh in favor of a stay.

The Court finds a stay at this stage of the litigation would be appropriate. Accordingly, this factor weighs in favor of Ericsson's request for a stay.

Given that the factors weigh in favor of Ericsson's stay request, the Court grants the motion and issues a stay. These are extraordinarily complex patent disputes in which a major research university has sued four multinational corporations, with three intervenors, that are household names, concerning technology that is used on a near-constant basis by persons worldwide. While the Court is well aware that it is not common to institute a stay before the USPTO has even instituted IPR proceedings, the potential for enormous cost and time savings should an IPR result outweighs the delay caused by a stay, particularly in cases that are pre-*Markman* and still in relatively early stages despite

being filed in November 2014. Even the chance for simplification in these hyper complex cases warrants the measure of instituting a stay before IPR has instituted.

The Court is cognizant, however, that it ordered Sprint to produce certain discovery. The Court does not find prejudice to Sprint, or any other party, in requiring Sprint to comply with the University's discovery requests as ordered herein while the stay is otherwise in effect.

### III.    CONCLUSION

Based on the foregoing and all of the files, record, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1.      Regents of the University of Minnesota's Motion to Compel Complete Discovery Responses and Document Productions, (ECF No. 230, Case No. 14-cv-4669), is **GRANTED**. Sprint shall supplement its discovery responses within 21 days of the date of this Order.

2.      Ericsson's Motion for Limited Stay Pending USPTO Institution Decision on Inter Partes Review of the Asserted Patents, (ECF No. 218, Case No. 14-cv-4666; ECF No. 248, Case No. 14-cv-4669; ECF No. 240, Case No. 14-cv-4671; and ECF No. 239, Case No. 14-cv-4672), is **GRANTED** as follows:

   a.      This case is **STAYED** pending the USPTO's decision on Ericsson's IPR petitions, subject only to the supplemental discovery responses set forth in the preceding paragraph.

       b.     Ericsson, with input from the University and the other defendants in this matter, shall file a status letter every 3 months detailing the progress of its IPR petitions.

3.  All prior consistent orders remain in full force and effect.

4.  Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: May 19, 2017                               *s/ Tony N. Leung*
                                           Tony N. Leung
                                           United States Magistrate Judge
                                           District of Minnesota

                                           *Univ. of Minnesota v. AT&T*
                                           Case No 14-cv-4666 (JRT/TNL)

                                           *Univ. of Minnesota v. Sprint*
                                           Case No 14-cv-4669 (JRT/TNL)

                                           *Univ. of Minnesota v. T-Mobile*
                                           Case No 14-cv-4671 (JRT/TNL)

                                           *Univ. of Minnesota v. Verizon*
                                           Case No 14-cv-4672 (JRT/TNL)